UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KAREN FISHER, ) | CASE NO. 5:16CV708 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, ) | AND ORDER |
| ) | |
| Defendant. ) | |

Plaintiff Karen Fisher ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her seventh application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that: (1) the administrative law judge ("ALJ") failed to give appropriate weight to the opinions of the examining psychologist; and (2) the ALJ erred in assessing Plaintiff's credibility. ECF Dkt. #13.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed her most recent application for SSI on September 4, 2012. ECF Dkt. #8 ("Tr.") at 210-215.[2]  She alleged disability beginning August 17, 2012 due to depression, bipolar disorder, anxiety attacks, and schizophrenia. *Id.* at 241, 197. The Social Security Administration ("SSA") denied her application initially and upon reconsideration. *Id.* at 153-156, 160-167. Plaintiff requested a hearing before an ALJ, and the hearing was held on August 27, 2014. *Id*. at 54, 168.

---

[1]On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

On September 22, 2014, the ALJ issued a decision denying Plaintiff's application for SSI. Tr. at 37-49. On March 22, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. The parties thereafter consented to the undersigned's jurisdiction. ECF Dkt. #15. Plaintiff filed a brief on the merits on September 8, 2016 and Defendant filed her merits brief on November 22, 2016. ECF Dkt. #s 13, 17.

## II.     RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A.     Relevant Medical Evidence

As both parties acknowledge, Plaintiff has a long history of treatment for bipolar disorder, social anxiety disorder, and schizoaffective disorder. ECF Dkt. #13, at 3 and ECF Dkt. #17, both citing Tr. at 15-29, 274-298, 305-341, 385-423, 426-444, 455-486, 507-521. Medical notes show that Plaintiff's primary mental health provider since December 7, 2010 was The Counseling Center of Wayne and Holmes Counties. *Id.*

December 13, 2010 treatment notes show that Plaintiff presented for a medication check and reported that she had not been doing well although she could not explain reasons for not doing well. Tr. at 284, 340. She had increased paranoid ideation and depressed mood and decreased self-care. *Id.* She feared someone coming to her door and spent most of her time in her nightclothes and had not been bathing regularly. *Id.* Upon mental examination, Plaintiff was found to be appropriately groomed and dressed, with good eye contact, clear speech, and fair memory and concentration. *Id.* She acknowledged paranoid ideation but denied hallucinations. *Id.* Her insight and judgment were in need of improvement. *Id.* She was diagnosed with bipolar disorder, depressed with psychotic features, social anxiety disorder, and general anxiety disorder. *Id.* Her Celexa, Lamictal, and Trazadone were continued, and Ability was replaced with Geodon. *Id.*

Treatment notes show that on January 10, 2011, Plaintiff presented for a medication check and reported that she had not been compliant with Geodon because she had read about its side effects and was scared, so she disposed of it. Tr. at 283. She reported auditory hallucinations in the form of hearing her daughter speak and hearing someone knocking on her door. *Id.* Upon mental examination, Plaintiff was found to be appropriately groomed and dressed, with good eye contact, clear speech, and fair memory and concentration. *Id.* She acknowledged paranoid ideation and

auditory hallucinations. *Id*. Her insight and judgment were in need of improvement. *Id*. She was diagnosed with bipolar disorder, depressed with psychotic features, social anxiety disorder, and general anxiety disorder. *Id*. Her Geodon was restarted, Lamictal was continued, and Celexa was continued. *Id*.

January 25, 2011 treatment notes indicate that Plaintiff presented for evaluation and treatment and reported that she becomes mean and has lost friends due to her irritability, talking mean to others, calling them names and telling them to leave her alone. Tr. Ta 328. Plaintiff indicated that she did not have periods where she will stay awake for days or have out of control impulses, although she occasionally hears someone call her name. *Id*. She reported panic attacks 1-2 times per week and was concerned about her anxiety as she felt uncomfortable in crowds and would send her daughters to the store rather than go herself. *Id*. Plaintiff believed that people were judging her and staring at her. *Id*. Upon examination, Plaintiff was oriented, had good hygiene and fair eye contact, clear speech, mildly anxious mood, intact concentration and memory, auditory hallucinations, poor to fair judgment and insight, and normal psychomotor activity. *Id.* She was diagnosed with recurrent bipolar disorder not otherwise specified and anxiety disorder not otherwise specified. *Id.* Her Lamictal was increased and she was given prescriptions for Geodon, Cogentin, Lexapro and Trazadone. *Id.*

Treatment notes show that on April 11, 2011, Plaintiff presented for a medication check after not showing for her March 16, 2011 medication check due to illness. Tr. at 278, 335. Plaintiff reported that she was unable to wash or shower without a close family member present in the house and she had auditory hallucinations in the form of music when no music was playing and she smelled an annoying odor of smoke which caused her to search her house repeatedly. *Id.* She related that she lived near an arsonist before and her prior apartment was broken into which elevated her anxiety. *Id*. She also reported leg cramps and muscle aches that could be related to one of the medications that she was taking, Geodon. *Id*. Upon mental examination, Plaintiff was found to be appropriately groomed and dressed, with good eye contact, clear speech, and fair memory and concentration. *Id*. Her insight and judgment were in need of improvement. *Id*. She was diagnosed with bipolar disorder, depressed with psychotic features, social anxiety disorder, and anxiety

-3-

disorder not otherwise specified. *Id*. Her Geodon was increased, Lamictal was continued, Celexa was discontinued and Lexapro was started, Trazadone was continued, and Cogentin was added. *Id*.

On July 14, 2011, Dr. Smith, Psy.D., conducted a psychological disability assessment at the request of the agency. Tr. at 300. Plaintiff presented, reporting that she had problems with emotional maladjustment and periods of psychotic functioning. *Id*. She indicated that these problems were identified in early adulthood and were stable and persistent. *Id.* Plaintiff explained that she tended to be withdrawn, had lack of interest in jobs, conflicts with bosses, and had not had real social involvement with people. *Id.* at 300-301. Plaintiff reported that medications have helped, but her current problems related to work difficulties, social relationships and with Plaintiff herself. *Id.* at 301.

Upon examination, Dr. Smith found that Plaintiff was alert, passive, dependent, indifferent, withdrawn and nervous. Tr. at 301. At the beginning of the interview, Plaintiff was described as timid, cautious, and emotionally distant. *Id*. Before the period began, Plaintiff reported that she had schizophrenia, bipolar disorder, severe anxiety, and depression. *Id.* She described her hallucinations and mood swings, and indicated that she never used drugs and alcohol and she last worked at Rubbermaid as a customer service representative but had a problem with a supervisor when she was asked to work on Mother's Day and she felt that it was not right. *Id.*

Dr. Smith described Plaintiff's motivation as good when work tasks were presented to her, but Plaintiff was not efficient because she worked slowly and became disorganized and missed details. Tr. at 302. Plaintiff's stress level was elevated and produced tension, anxiety, and insecurity, and her mood was described as somewhat anxious, sad, and pessimistic, with an inappropriate affect. *Id.* The Millon Clinical Multiaxial Inventory suggested the combination of a mood disorder and personality problems, along with strong anxiety, a depressed mood and a number of schizoid qualities. *Id.* Plaintiff's personality was described as having a somewhat primitive ego that is somewhat inflexible, with marginal reality testing with occasional misperceptions or faulty assessment of reality and cognitive functioning showed inefficiency in the form of disorganization and autistic thought content. *Id.*

Dr. Smith described Plaintiff's interpersonal level as Plaintiff having psychodynamic issues relating to safety and security, believing that people would hurt her if they had the chance. Tr. at 302. She also found Plaintiff to be easily distracted, overfocused and easily disrupted, with apparent deficits in immediate and remote memory. *Id*. at 303. On the Weschler Adult Intelligence Scale, III, Plaintiff scored a verbal IQ of 75, placing her in the borderline range of intellectual functioning. *Id.* Dr. Smith believed that this score was somewhat low as a measure of Plaintiff's best current functioning and a slight underestimate of her capacity because of interference from nonintellectual factors, such as Plaintiff's anxiety during testing, and her serious emotional problems. *Id*. Dr. Smith estimated that Plaintiff could function within the borderline range as Plaintiff's subtest scores showed no relative strength or weakness on verbal tasks and her testing did not support her having graduated high school in regular classes. *Id*.

As to Plaintiff's motor functions, Dr. Smith noted some hypoactivity and motor retardation, and she noted slow speech and slowed thinking. Tr. at 303. Dr. Smith reported that Plaintiff displayed preoccupation with her mental health issues, as well as social and interpersonal deficits, with ideas of reference, odd beliefs, unusual perceptual experiences, odd thinking and speech, paranoid suspiciousness, peculiar behavior, a lack of close friends, and excessive social anxiety based upon paranoid fears. *Id*.

Dr. Smith diagnosed Plaintiff with schizoaffective disorder, bipolar disorder and schizophrenia by history, borderline intellectual functioning, and she indicated that Plaintiff was experiencing a combination of a mood disorder and significant personality problems, with strong anxiety, a depressed mood, and a number of schizoid traits. Tr. at 303. She rated Plaintiff's global assessment of functioning at 49, indicative of serious symptoms. *Id*. She recommended that Plaintiff participate in outpatient psychological treatment and she should receive a psychiatric evaluation of her condition. *Id*. at 304. She opined that Plaintiff "should be considered 'psychologically disabled.'" *Id*.

Plaintiff continued to receive medication treatment and follow-up for her psychological conditions at The Counseling Center from 2011-2014. Tr. at 305-341. Treatment notes show that in July of 2011, Plaintiff was managing to live on her own in the community with the support of her

children. *Id.* at 315. Plaintiff continued to report ongoing paranoia and hallucinations at times in 2011. *Id.* at 314-319. Psychiatric treatment notes from February 17, 2012 indicated that Plaintiff reported that she was doing "dumb" things and will be inconsiderate of others for no reason. *Id*. at 326. She described her mood as anxious and worrying about unimportant events. *Id*. She felt nervous and had panic attacks where she "freaks out," but she denied agoraphobia. *Id*. She also reported that she heard her daughter's voice or the phone ringing. *Id.* Plaintiff indicated that her mood was mildly anxious, but it was overall improved and stabilized and her sleep and appetite were adequate. *Id*. Upon examination, Plaintiff was oriented, had good hygiene and fair eye contact, clear speech, anxious mood, fair judgment and insight, and normal psychomotor activity. *Id.* She was diagnosed with recurrent bipolar disorder not otherwise specified and anxiety disorder not otherwise specified. *Id.* Based upon Plaintiff's report that the increased Lamictal had stabilized her mood and her medications were effective and well-tolerated, the medications were continued. *Id.*

Psychiatric treatment notes from April 13, 2012, indicated that Plaintiff reported feeling good and stable, with good family support and sleep. *Id.* at 324. Plaintiff indicated that her two sisters have schizophrenia and have both been hospitalized several times. *Id*. Upon examination, Plaintiff was oriented, had good hygiene and eye contact, clear speech, euthymic mood, auditory hallucinations, good judgment and insight, and normal psychomotor activity. *Id.* She was diagnosed with recurrent bipolar disorder not otherwise specified and anxiety disorder not otherwise specified. *Id.* Her Lexapro, Lamictal, Geodon, Cogentin and Trazadone were continued. *Id.*

On July 13, 2012, a psychiatric treatment note indicated that Plaintiff reported increased energy, but not staying awake for days, and she had adequate appetite and sleep, a depressed mood with crying often as she had several stressors that were creating anxiety and depression. *Id*. at 322. Upon examination, Plaintiff was oriented, had good hygiene and eye contact, clear speech, depressed mood, no reported hallucinations, good judgment and insight, and normal psychomotor activity. *Id.* She was diagnosed with recurrent bipolar disorder not otherwise specified and anxiety disorder not otherwise specified. *Id.* Her Lexapro was increased and her Lamictal, Geodon, Cogentin and Trazadone were continued. *Id.*

On October 5, 2012, a psychiatric treatment note indicated that Plaintiff reported racing thoughts, difficulties concentrating and focusing, and hearing voices like her daughter's voice or a stereo a couple times per week. Tr. at 392. She indicated that her symptoms started in 1998 and she had been with the Counseling Center for 12 years. *Id.* Upon examination, Plaintiff had nonpressured speech, fair affect, up and down mood, no flight of ideas, no overt delusions and occasional auditory hallucinations. *Id.* She was diagnosed with bipolar affective disorder, currently mixed, and anxiety disorder not otherwise specified. *Id.* Her Lexapro was decreased, Geodon was increased, and Lamictal, Cogentin and Trazadone were continued. *Id.*

Progress notes from November 2, 2012 indicated that Plaintiff reported doing better and having a more stable mood. Tr. at 391. She stated that she still occasionally heard sounds, like knocking on a door, her cell phone ringing when it was not, or music playing, but she felt leveled out and was tolerating her medications well. *Id.* Examination showed that Plaintiff was well groomed, had nonpressured speech, fair affect, euthymic mood, and occasional auditory hallucinations. *Id.* She was diagnosed with bipolar affective disorder, currently euthymic, and anxiety disorder not otherwise specified. *Id.* Her Lexapro, Lamictal, Geodon, Cogentin and Trazadone were continued. *Id.*

On December 3, 2012, psychiatric treatment notes indicated that Plaintiff reported having problems with her memory, like forgetting to shower off her soap and forgetting what she was looking for when she went into a room. Tr. at 389, 396, 421. She indicated that she had increased energy and some racing thoughts, but she was sleeping fine. *Id.* Upon examination, Plaintiff was oriented, had good hygiene and non-pressured speech, fair affect, fairly decent mood, and no thought disorder or perceptual disturbances. *Id.* She was diagnosed with bipolar affective disorder, currently perhaps mildly hypomanic, and anxiety disorder not otherwise specified. *Id.* Her Lexapro was decreased and her Lamictal, Geodon, Cogentin and Trazadone were continued. *Id.*

On January 21, 2013, psychiatric treatment notes indicated that Plaintiff reported that her mood was up and down, she was not bathing as she should, and she was feeling depressed with low energy, racing thoughts and inability to concentrate. Tr. at 417. Upon examination, Plaintiff was appropriately groomed, calm and cooperative, had normal behavior and speech, she had reactive and

mood congruent affect, depressed mood, and fair judgment and insight. *Id.* at 417-418. She was diagnosed with bipolar affective disorder, depressed mood, and anxiety disorder not otherwise specified. *Id.* at 418. Her GAF was rated at 50, indicative of serious symptoms, and her Lexapro was increased and her other medications were continued. *Id.* at 419.

On March 9, 2013, psychiatric treatment notes indicated that Plaintiff reported occasional mood swings and racing thoughts, and losing her train of thought. Tr. at 411. She had nearly normal energy and was better maintaining her daily living activities. *Id.* She still heard voices when no one was speaking and smelled perfume. *Id.* Upon examination, Plaintiff was appropriately groomed, calm and cooperative, had normal behavior and speech, normal affect, euthymic mood, and fair judgment and insight. *Id.* at 410-412. She was diagnosed with schizoaffective disorder, bipolar disorder and anxiety disorder not otherwise specified. *Id.* at 412. Her GAF was rated at 50, indicative of serious symptoms, and her medications were continued. *Id.* at 413.

May 7, 2013 progress notes from the Counseling Center indicate that Plaintiff reported that her hallucinations were reduced, but she was depressed and crying on occasion, and had mood swings and racing thoughts. Tr. at 408. She rated her depression as 8 out of 10. *Id.* She indicated that her energy was poor and she could not clean her house. *Id.* She had no sleeping or eating problems. *Id.* Upon examination, Plaintiff was appropriately dressed and groomed, was calm and cooperative, had normal behavior and speech, normal affect, depressed mood, and fair insight and judgment. *Id.* at 408-409. She was diagnosed with schizoaffective disorder, bipolar disorder, and anxiety disorder not otherwise specified. *Id.* at 409. Her GAF was rated at 45, indicative of serious symptoms. *Id.* at 410. Her medications were continued. *Id.*

July 11, 2013 psychiatric treatment notes indicated that Plaintiff reported doing okay, but she was depressed. Tr. at 422. She denied hallucinations, but then stated that she still heard a phone ringing, knocking and music playing. *Id.* She liked her medication combination, but she was having problems with her memory. *Id.* Upon examination, Plaintiff was appropriately groomed, calm and cooperative, had normal behavior and speech, reactive and mood congruent affect, euthymic mood, and good judgment and insight. *Id.* at 422-423. She was diagnosed with schizoaffective disorder,

-8-

bipolar disorder and anxiety disorder not otherwise specified. *Id.* at 423. Her GAF was rated at 51, indicative of moderate symptoms, and her medications were continued. *Id.*

September 12, 2013 psychiatric treatment notes indicated that Plaintiff was not doing well due to the death of her neighbor/friend, and she was feeling paranoid and nervous and afraid to talk to people. Tr. at 432. She said she only wanted to talk to her mother and to the current Certified Nurse Practitioner ("CNP") authoring the note, although the CNP thought it strange since she just met Plaintiff. *Id.* Plaintiff felt that her medications needed adjusted and she reported sleep problems and weight gain and feeling like she was having a nervous breakdown. *Id.* Upon examination, Plaintiff was appropriately groomed, had an elevated attitude, loud, pressured speech, a labile affect, euthymic and anxious mood, distractible/inattentive memory and concentration, and fair judgment and insight. *Id.* at 432-433. She was diagnosed with bipolar disorder and anxiety disorder not otherwise specified. *Id.* at 433. Her GAF was rated at 45, indicative of serious symptoms, and it was noted that Plaintiff had stressors relating to not getting social security benefits. *Id.* Her Geodon and Lamictal were decreased, Cogentin was continued and Tegretol, Restoril and Clonazepam were added. *Id.* at 433. It was noted that Plaintiff refused counseling, indicating that she just likes to see the psychiatrist for medication management. *Id.*

October 25, 2013 treatment notes indicated that Plaintiff reported her aunt passed away and she was feeling overanxious since she was put on different medications. Tr. at 430. She indicated that she did not feel like doing anything and she stayed in bed a lot. *Id.* She heard knocks on the door and someone saying "mom." *Id.* She was worried about being home alone and having to interact with someone if they came to her home. *Id.* She reported sleeping problems and eating problems. *Id.* Upon examination, Plaintiff was appropriately groomed, calm and cooperative, had normal behavior and speech, reactive and mood congruent affect, euthymic mood, and good judgment and insight. *Id.* at 430-431. She was diagnosed with schizoaffective disorder, bipolar disorder and anxiety disorder not otherwise specified. *Id.* at 412. Her GAF was rated at 51, indicative of moderate symptoms, and her medications were continued, although Restoril was discontinued and Ambien and Cymbalta were started. *Id.* at 431.

Treatment notes from November 22, 2013 indicated that Plaintiff was grieving from the passing away of her father's cousin. Tr. at 428, 436. She denied hallucinations and reported no side effects from her medications. *Id.* Upon examination, Plaintiff was appropriately groomed, calm and cooperative, had normal behavior and speech, reactive and mood congruent affect, euthymic mood, and fair judgment and insight. *Id.* at 428-429. She was diagnosed with schizoaffective disorder, bipolar disorder and anxiety disorder not otherwise specified. *Id.* at 412. Her GAF was rated at 51, indicative of moderate symptoms, and her medications were continued. *Id.* at 413.

On February 14, 2014, psychiatric treatment notes indicated that Plaintiff reported that everything was stable and she was not hearing as many voices or knocks on the door. Tr. at 443. She had no sleeping or eating problems and no medication side effects. *Id.* Upon examination, Plaintiff was appropriately groomed, calm and cooperative, had normal behavior and speech, reactive and congruent affect, euthymic mood, and good judgment and insight. *Id.* at 443-444. She was diagnosed with schizoaffective disorder, bipolar disorder and anxiety disorder not otherwise specified. *Id.* at 444. Her GAF was rated at 51, indicative of moderate symptoms, and her medications were continued. *Id.*

August 7, 2014 progress notes indicated that Plaintiff reported really high anxiety and trouble sleeping as her daughter moved out and her 2 sisters were worrying because of her health as one sister was in and out of mental hospitals. Tr. at 508. She was keeping busy with her mother cleaning, reading, and going shopping and she missed her daughter. *Id.* She was nervous about her upcoming social security hearing. *Id.* She indicated that her depression was stable and everything was stable except for her anxiety and sleep. *Id.* Upon examination, Plaintiff was appropriately groomed, calm and cooperative, had normal behavior and speech, reactive and mood congruent affect, euthymic mood, and good judgment and insight. *Id.* at 508-509. She was diagnosed with schizoaffective disorder, bipolar disorder and anxiety disorder not otherwise specified. *Id.* at 509. Her GAF was rated at 51, indicative of moderate symptoms, and her medications were continued, except Ambien was discontinued and Restoril was started. *Id.*

September 17, 2014 progress notes indicated that Plaintiff reported doing terrible and did not make it to her last appointment and ended up taking some old Ambien and 2 Restoril caplets at

night.Tr. at 520.  She indicated that her social security hearing went "perfect."  *Id*.  She was not sleeping well.  *Id*.  Upon examination, Plaintiff was appropriately groomed, calm and cooperative, had normal behavior and speech, reactive and mood congruent affect, euthymic mood, and good judgment and insight.  *Id.* at 520-521.  She was diagnosed with schizoaffective disorder, bipolar disorder and anxiety disorder not otherwise specified.  *Id.* at 521.  Her GAF was rated at 58, indicative of moderate symptoms, and her medications were continued, except Restoril was increased.  *Id*.

### B.     Relevant Testimonial Evidence

At the ALJ hearing, Plaintiff testified that she was 54 years old and last worked on May 5, 1999 as a customer service desk representative at Everything Rubbermaid.  Tr. at 60.  She reported that she worked there from 1995-1999 and left because she was asked to work on Mother's Day and she refused.  *Id*. at 60-61.  She indicated that she had not applied for any jobs since that time.  *Id*. at 61.  Plaintiff indicated that she lived alone since April of 2014 and she did not drive.  *Id*. at 61-62.

Plaintiff reported that she does her housework during the day or sleeps most of the day.  Tr. at 62.  She said that she had no hobbies and never had hobbies and she visited with her daughter and her mother once a week.  *Id*. at 63.  She goes to her doctor appointments and to the grocery store with her mother twice a month.  *Id*.

When asked why she could not work, Plaintiff responded that she gets overanxious, she hears voices and music, smells smoke and perfume or cologne and she feels like she cannot be in public because she is scared to be around people.  Tr. at 64-65.  She explained that she had to be by her mother at all times when she went to the store ever since she got divorced and prior to her divorce, she had to be with her husband at the store.  *Id*. at 65.  She explained that everyday she hears her daughter calling out her name when her daughter is not around and she hears knocks on the door when no one is there.  *Id.*  She also hears music and has nothing in her house that plays music, like a television or computer.  *Id.* at 66.  She said that the last time that this happened was the day before the hearing when she heard a knock at the door.  *Id*.

Plaintiff reported that she also has mood swings from her bipolar disorder, where sometimes she will yell at her mother and tell her to leave, and then later she will apologize.  Tr. at 66.  When

-11-

asked when this last happened or when she had a mood swing, Plaintiff could not remember. *Id.* at 66-67. She also reported problems with depression and cried a lot and she recalled that the last time she cried was a few days ago when she found out that her sister had a broken hip and had to go to the hospital. *Id*. at 67. Plaintiff could not remember the last time that she had anxiety. *Id*. at 68. Plaintiff indicated that her medications helped her symptoms. *Id*.

Upon questioning from her attorney, Plaintiff testified that she gets really nervous and scared around people, but she had no physical symptoms from the anxiety. Tr. at 69. She explained that even when her mother or sister is with her around other people, she still feels scared. *Id*. at 70.

Plaintiff also reported that she was forgetting to take her medications when they came in bottles, but now they are bubble packed and labeled when they should be taken, so she is not forgetting. Tr. at 71. ,Plaintiff described her mood swings, hallucinations and her memory. *Id*. at 71-73.

The ALJ then questioned the vocational expert ("VE"). Tr. at 75. He asked the VE to consider whether a hypothetical person could perform jobs with the same age and education as Plaintiff with an ability to perform work at all exertional levels, with an ability to perform simple, unskilled tasks, no more than incidental public contact and occasional co-worker contact. Tr. at 75-76. The VE testified that such a hypothetical individual could perform the jobs of final assembler, street cleaner, and laundry workers, which were jobs existing in significant numbers in the national economy. *Id*. at 76.

The ALJ modified his hypothetical individual to include the ability to work at all exertional levels, with performing only simple, routine, repetitive tasks, free of fast-paced production requirements, only routine workplace changes, and only occasional superficial interaction with the public and co-workers. Tr. at 77. The VE testified that the same three jobs that he identified would be available for such a person. *Id*.

The ALJ asked the extent to which a hypothetical individual could be off task and the VE responded that an individual could be off task no more than 10 percent of the workday. Tr. at 78. Plaintiff's counsel asked the VE what employers tolerated concerning missing work in an unskilled

-12-

work environment, and the VE responded that such employers would tolerate no more than one day per month for absences. *Id*.

### III.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In his September 22, 2014 decision, the ALJ cited to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6) and found that new and material evidence existed concerning Plaintiff's RFC such that he was not bound to adopt the prior ALJ's RFC for her. Tr. at 37. He also cited to *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990) and found that he was not bound by the prior ALJ's finding that Plaintiff had past relevant work as the current ALJ's review of the record found that the prior work was not performed at substantial gainful activity levels. *Id*.

Accordingly, the current ALJ found that Plaintiff had not engaged in substantial gainful activity on November 17, 2010, the application date, and he found that since that date, Plaintiff had the following severe impairments: bipolar disorder, borderline intellectual functioning disorder, and schizoaffective disorder. Tr. at 39-40. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 40-42. After considering the record, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the nonexertional limitations of: simple, routine and repetitive tasks; work environment free of fast-paced production requirements and routine workplace changes; occasional interaction with the public and co-workers; and only superficial contact, defined as no negotiation or confrontation with others. *Id*. at 42. Finding no past relevant work, and considering Plaintiff's age, education, work experience, the RFC and the VE's testimony, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 48. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to SSI. *Id.*

### IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir.

-14-

2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## VI.  LAW AND ANALYSIS
### A.  Nontreating Opinion of Dr. Smith, Psy.D.

Plaintiff asserts that the ALJ erred in failing to accept the opinions of Dr. Smith, the agency examining psychologist, and in attributing more weight to the opinions of agency reviewing psychologists over those of Dr. Smith. ECF Dkt. #13 at 7-11. Plaintiff contends that the ALJ failed to cite to any findings that undermined Dr. Smith's opinions and the record consistently showed that Plaintiff had mental health issues, including auditory hallucinations and paranoia. *Id*. at 10.

Plaintiff is correct that generally, more weight is attributed to the opinions of examining medical sources than to the opinions of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, an ALJ can attribute significant weight to the opinions of a nonexamining state agency medical expert in some circumstances because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). Moreover, an ALJ is not required to explain why he favored one examining opinion over another as the "good reasons"

-15-

rule requiring an ALJ to explain the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006).

Here, the ALJ articulated the weight that he gave to Dr. Smith's opinions and he sufficiently explained why he attributed little weight to those opinions. Tr. at 46. He first addressed Dr. Smith's opinion that Plaintiff should be considered "psychologically disabled." *Id*. He found that this statement was a conclusory statement and provided little probative value concerning Plaintiff's RFC. *Id*. The ALJ is correct. The statement that Plaintiff should be considered psychologically disabled is of little value and no special significance as 20 C.F.R. § 416.927(d) provides that a medical source's opinion as to a claimant's ability to work is an issue reserved for the Commissioner, such an opinion does not mean that a claimant will be determined unable to work, and no special significance is given to such an opinion. *Id*. Moreover, the ALJ correctly found that Dr. Smith's statement that Plaintiff should be considered "psychologically disabled" with regard to "her work situation," is conclusory as the statement is unaccompanied by any detail or explanation in Dr. Smith's report. *Id*. at 304.

Nevertheless, the ALJ also determined that Dr. Smith's opinions were not consistent with the mental status examinations of Plaintiff during her treatment. Tr. at 46. In his review of the medical evidence, the majority of which occurred subsequent to Dr. Smith's opinions, the ALJ noted many mental status examinations at the Counseling Center which showed a waxing and waning of symptoms, but clinical findings of normal range of affect, good insight and judgment, good hygiene and eye contact, logical speech, and a calm and cooperative attitude. *Id*. at 44-46, citing Tr. at 389, 398-399, 408-409, 428-429, 443-444, 508-509. The ALJ also noted improvements in Plaintiff's hallucinations, as well as increases in her energy levels and feelings of mood stability with medication adjustments and compliance. *Id.* at 44-45, citing Tr. at 322, 391, 411-412, 443. The ALJ also acknowledged the GAF scores reported between 45 and 51, indicative of severe to moderate symptoms. Tr. at 47. He noted that while the scores were evidence of Plaintiff's presentation during various examinations, they provided only a snapshot of functioning during that time, although he did attribute some weight to them. *Id*. The ALJ also noted periods of increased symptoms, but he indicated that Plaintiff was not always compliant with medications. *Id.*, citing Tr. at 44, 278, 283.

-16-

As also noted by the ALJ, Plaintiff reported an increased ability to recognize her symptoms and an intention to follow-up for treatment when symptoms arose. *Id*. at 44, citing Tr. at 322.

Plaintiff contends that deference should be given to the opinions of an examining physician over an ALJ. ECF Dkt. #13 at 10. However, the social security regulations give the ALJ the authority to make the ultimate determination of disability and RFC, not a treating, examining or reviewing physician. 20 C.F.R. § 416.927(d)(1)-(3). Plaintiff also asserts that the ALJ did not cite to a specific finding that undermined Dr. Smith's opinions. ECF Dkt. #13 at 10. However, the ALJ cited to numerous examination findings indicating Plaintiff's stable mental status, normal speech and eye contact, and her good insight and judgment. Tr. at 44-47, citing Tr. at 322, 324, 326, 389, 417-418, 443-444, 508-509. Finally, Plaintiff asserts error with the ALJ's finding that Dr. Smith's statement that she is "psychologically disabled" was conclusory. ECF Dkt. #13 at 11. She posits that a treating physician's opinion that a patient is disabled must not be disregarded. *Id*. (citation omitted.). However, Dr. Smith is not a treating physician and her opinion as to whether Plaintiff was psychologically disabled was specifically considered by the ALJ, who found that the statement was conclusory and the medical evidence of record was inconsistent with such a finding. Tr. at 46. As to the opinions of the agency reviewing sources, the ALJ afforded them some weight and actually restricted Plaintiff's functional limitations more than those opined by the agency reviewing sources, which is within the ALJ's purview to do. *See* 20 C.F.R. § 416.927(e)(2)(i) (ALJ is not bound by any findings of State agency psychological consultants or any other program psychologists).

Based upon a review of the merits briefs, the law, the record, and the ALJ's decision, the Court finds that the ALJ adequately explained his reasons for attributing little weight to the opinions of Dr. Smith and substantial evidence supports that determination. While substantial evidence may exist to the contrary, the standard of review is whether the ALJ applied the proper legal standards and whether substantial evidence supports the ALJ's determination. The ALJ did properly apply the legal standards and substantial evidence supports his treatment of Dr. Smith's opinions.

### **B.** **Credibility**

Plaintiff also challenges the ALJ's credibility determination, asserting that the ALJ failed to make a proper credibility analysis. ECF Dkt. #13 at 11-14. She asserts that the ALJ merely used

boilerplate language in assessing her credibility and failed to provide specific reasons for discounting her credibility. *Id.*

The social security regulations establish a two-step process for evaluating pain. See 20 C.F.R. § 404.1529, SSR 96–7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir.1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038–1039 (6th Cir.1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96–7p. *See* SSR 96–7p, 61 Fed.Reg. 34483, 34484–34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039–40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234.

Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir.1997).

Upon review of the ALJ's decision in the instant case, the Court finds that the ALJ properly conducted a credibility analysis that contained much more than a boilerplate rendition of the steps for evaluating credibility and reliance only upon Plaintiff's daily activities.  In his decision, the ALJ cited to the proper two-step process in evaluating Plaintiff's credibility.  Tr. at 42.  He determined that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible.  *Id*. at 43.  He thereafter summarized Plaintiff's statements in her disability reports and her testimony at the hearing concerning her impairments and resulting limitations.  *Id*. at 42-47.  He reviewed Plaintiff's daily living activities, which he found were inconsistent with her reports that she feared and had difficulties with others as she indicated that she grocery shopped at Walmart, babysat her three grandchildren, whose ages spanned from nine months to four years old, she expressed excitement at attending a wedding, and she expressed excitement when her friend was released from rehabilitation.  *Id.* at 47, citing Tr. at 444.  The ALJ also considered that Plaintiff was not always consistent with her medications and her symptoms increased as a result.  *Id*.  He further considered possible benefits-seeking behavior as Plaintiff stated at her psychiatric follow-up assessment that the ALJ hearing would be the last time she could file "since there'll be no more evidence in the future.  She thinks they'll go for schizoaffective."  *Id*. at 47, citing Tr. at 508.

While Plaintiff asserts that the ALJ relied solely upon these minimal activities, the ALJ's decision specifically contradicts this assertion.  The ALJ specifically acknowledged that these instances were not dispositive, stating that "[w]hile not dispositive, these inconsistencies call into question the claimant's statements regarding the nature of her symptoms and impairments."   Tr. at 47.  The ALJ had also reviewed the medical evidence concerning Plaintiff's impairments, including the opinions of Dr. Smith and the agency reviewing psychologists, and the numerous treatment notes from the Counseling Center.  *Id*. at 43-47.  He also addressed the aggravating factor of Plaintiff's noncompliance with medications, mitigating factors such as when Plaintiff's

medications were adjusted properly, and he described the medications that Plaintiff was taking and their effectiveness and adjusted dosages. *Id*. at 43-47. The ALJ thus went beyond mere boilerplate language by considering nearly every factor outlined in SSR 96–7p and substantial evidence supports his credibility determination.

## VII. CONCLUSION

For the following reasons, this Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: February 28, 2017         */s/George J. Limbert*
                                GEORGE J. LIMBERT
                                UNITED STATES MAGISTRATE JUDGE